**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

VLADIMIR SEMENOV,

Petitioner,

v. Case No. 2:26-cv-02421-MSN-atc

CHRISTOPHER BULLOCK,
New Orleans Field Office Director
for ICE Enforcement and Removal Operations,

Respondent.

---

**ORDER DENYING AMENDED PETITION FOR HABEAS RELIEF**

---

Before the Court is Petitioner Vladimir Semenov's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Amended Petition"), filed June 15, 2026. (ECF No. 9.) Petitioner, a native and citizen of Russia, is an alien detained at the West Tennessee Detention Facility in Mason, Tennessee. (*Id*. at PageID 47.) He initiated this action by filing his First Petition for Writ of Habeas Corpus on April 15, 2026. (ECF No. 1.) He also filed an emergency motion to enjoin his transfer out of the Western District of Tennessee and his removal from the United States. (ECF No. 6 at PageID 37.) His Amended Petition seeks immediate release or, alternatively, an individualized bond hearing. (ECF No. 9 at PageID 71.)

The Court ordered Respondent to show cause why the writ should not issue. (ECF No. 11.) Respondent argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is therefore ineligible for release on bond. (ECF No. 16 at PageID 97–99.) In his reply, Petitioner argues that he is eligible for bond under 8 U.S.C. § 1226(a). (ECF No. 17 at PageID 115.) For the reasons below, the Petition (ECF No. 9) is **DENIED**.

**BACKGROUND**

In October 2021, Petitioner applied for admission at the Otay Mesa Port of Entry on the U.S.–Mexico border. (I-213 Narrative, ECF No. 16-2 at PageID 105.) During processing, he requested asylum. (*Id.*) He had a Russian passport but no valid entry documents. (*Id.*) The Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear finding him to be an "arriving alien" and charging him as inadmissible because he lacked valid entry documents under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (ECF No. 9 at PageID 79, 82; ECF No. 16-2 at PageID 105.) DHS later paroled him into the United States under 8 U.S.C. § 1182(d)(5)(A) pending removal proceedings under 8 U.S.C. § 1229a. (ECF No. 16-2 at PageID 105.)

On December 4, 2025, law-enforcement officers in Mississippi stopped Petitioner for a traffic violation. (ECF No. 16-1 at PageID 102.) After learning that Petitioner lacked valid immigration documents, the officers requested assistance from Immigration and Customs Enforcement ("ICE"). (*Id.*) ICE detained Petitioner that day, and he has remained in ICE custody since. (*Id.*) When ICE detained him, Petitioner had a pending asylum application and an approved work permit. (*Id.*)

On February 6, 2026, an immigration judge denied Petitioner's request for bond, citing *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (ECF No. 9 at PageID 45.) After the Sixth Circuit decided *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), Petitioner again requested a bond hearing. (ECF No. 16-4.) On June 5, 2026, an immigration judge denied Petitioner's request for bond, finding that Petitioner was ineligible for release on bond because he was classified as an arriving alien seeking admission and therefore subject to mandatory detention under § 1225(b). (ECF No. 16-4 at PageID 112.) Although Petitioner reserved his right to appeal

that decision to the Board of Immigration Appeals ("BIA"), it does not appear that an appeal was taken. (ECF No. 9 at PageID 45.)

On July 22, 2026, an immigration judge granted Petitioner's request for asylum. (ECF No. 20-1 at PageID 132.) DHS filed a timely appeal of the asylum grant. (ECF No. 21-1 at PageID 137.) As of the date of this order, that appeal remains pending. *See Automated Case Information for Vladimir Semenov A-Number 220-760-922*, Executive Office of Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited November 9, 2026).

## ANALYSIS

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (citation modified). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas is available to aliens to challenge the lawfulness of their detention. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

### A. The Court has Jurisdiction to Decide Petitioner's Detention-Based Claims.

District courts may issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Petitioner challenges his ongoing detention on both statutory and constitutional grounds. Further, Petitioner has been and continues to be confined within the Western District of Tennessee. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[J]urisdiction lies in only one district: the district of confinement."). Accordingly, the Court has jurisdiction to decide Petitioner's claims.

### B. Petitioner's Statutory Claim Fails on the Merits.

Both parties agree that the outcome of the statutory claim turns on the applicability of either the mandatory detention scheme under 8 U.S.C. § 1225(b) or the permissive detention scheme

under § 1226(a). Petitioner argues that he is not subject to mandatory detention under § 1225(b)(2)(A) because he was paroled into the interior and not actively "seeking admission" at the time he was detained by ICE in December 2025. (ECF No. 9 at PageID 58; ECF No. 17 at PageID 116.) Respondent argues that Petitioner is classified as an "arriving alien" who was paroled into the United States; therefore, he is an "applicant for admission" and subject to mandatory detention under § 1225(b)(2)(A). Respondent has the better of the argument.

Under 8 U.S.C. § 1225(a), "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citation modified). All applicants for admission "shall be inspected by immigration officers" to determine their admissibility. 8 U.S.C. § 1225(a)(3). If the immigration officer determines that an arriving alien is inadmissible, then the alien shall be detained under either § 1225(b)(1) or (b)(2). *Jennings*, 583 U.S. at 287.

Section 1225(b)(1)(A) covers aliens who are inadmissible due to misrepresentation or, as in Petitioner's case, lack of valid entry documents.[1] *Id.* Such aliens are subject to expedited removal proceedings unless they express "either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Aliens who express an intention to apply for asylum are referred for an interview with an asylum officer and "*shall be detained* for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii) (emphasis added).

Section 1225(b)(2) serves as the "catchall provision" that covers all applicants for admission who are "not clearly and beyond a doubt entitled to be admitted" and, *inter alia*, not

[1] Although inapplicable here, § 1225(b)(1) also covers "certain other aliens" who are "designated by the Attorney General" in his "sole and unreviewable discretion." 8 U.S.C. § 1225(b)(1)(A)(iii).

covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(2)(A). Such aliens "*shall be detained* for a [removal] proceeding under section 1229a of [Title 8]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As emphasized above, whether an alien is detained under § 1225(b)(1) or (b)(2), detention is mandatory until certain proceedings conclude. *Jennings*, 583 U.S. at 297. Regardless of whether (b)(1) or (b)(2) applies, DHS may parole aliens detained at or near the border into the United States. 8 U.S.C. § 1182(d)(5)(A).

Unlike the mandatory detention scheme of § 1225(b), which applies to applicants for admission who are initially detained at or near the border, the permissive detention scheme of § 1226(a) applies to aliens who are already present in the United States. *Lopez-Campos*, 175 F.4th at 732. This includes aliens who are "in and admitted to the United States" and later become deportable, 8 U.S.C. § 1227(a); *see also Jennings*, 583 U.S. at 288, and aliens who cross our borders without inspection and reside unlawfully within the interior, *Lopez-Campos*, 175 F.4th at 732. Section 1226(a) generally[2] gives DHS discretion to issue warrants and detain such aliens "pending a decision on whether the alien is to be removed from the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)). It also grants discretion to release such aliens on bond or conditional parole. *Id.*

At root, Petitioner's statutory argument turns on the fact that he was paroled into the United States and resided here for a number of years. He argues that this fact makes him more like those aliens in *Lopez-Campos* who were found to be subject to § 1226(a)'s permissive detention scheme. He relies upon the reasoning in *Lopez-Campos* to support his argument, but his reliance is misplaced. *Lopez-Campos* involved aliens who never presented themselves for inspection at the

[2] Section 1226(c) removes this discretion for certain aliens described in subsection (c).

border and were therefore never lawfully detained under § 1225(b)(1) or (b)(2). *See Lopez-Campos*, 175 F.4th at 721 ("The thrust of this appeal is whether a noncitizen detained within the interior of the United States *who never affirmatively applied for admission* is subject to 8 U.S.C. § 1225(b)(A)'s mandatory detention scheme or 8 U.S.C. § 1226's permissive detention scheme (emphasis added)).

Unlike the aliens in *Lopez-Campos*, Petitioner presented himself for inspection at the border and was found to be inadmissible because he lacked valid travel documents. Therefore, he was properly detained under § 1225(b).[3] Whether we analyze his detention under § 1225(b)(1) or (b)(2), the result is the same. Petitioner "shall" be detained until either his asylum or removal proceedings are final—neither of which has happened. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), (b)(2)(A).

The fact that ICE paroled Petitioner into the interior pending those proceedings does not alter his position. Under 8 U.S.C. § 1182(d)(5)(A), DHS may "parole into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." Importantly, "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B); *see also id.* § 1182(d)(5). "[W]hen the purposes of such parole shall, in the opinion of [DHS], have been served *the alien shall forthwith return or be returned to the custody from which he was paroled* and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis

[3] The parties consistently cite § 1225(b)(2)(A) as the purported authority for mandatory detention, but it appears that § 1225(b)(1) is applicable here. The Court assumes that Petitioner was never placed in expedited removal because he claimed asylum or that ICE simply never initiated expedited proceedings. In this case, however, the distinction is without a difference because release on bond was never an option under either provision.

added). Because Petitioner was paroled from § 1225(b) custody, he was returned to § 1225(b) custody once his parole ended and ICE detained him. To hold otherwise would be "inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of [the Supreme Court]." *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958).

*Clark v. Martinez* is unhelpful to Petitioner. *See* 543 U.S. 371 (2005). *Clark* addressed the question of whether inadmissible aliens who are subject to final removal orders and held beyond the initial 90-day removal period were entitled to the same relief as admitted aliens under *Zadvydas v. Davis*. *See Clark*, 543 U.S. at 378; *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (holding § 1231(a)(6) includes implicit reasonableness limitation and creating six-month presumptive reasonableness rule). *Clark* answered that question in the affirmative and extended *Zadvydas* to inadmissible aliens detained under § 1231(a)(6). *Clark*, 543 U.S. at 378. Citing *Clark*, Petitioner argues that if returning to "custody" after parole under § 1182(d)(5)(A) meant returning to custody under § 1225(b), then the aliens in *Clark* would have never been released. (ECF No. 9 at PageID 52.) But this stretches the meaning of *Clark* beyond its limits. Importantly, the resident aliens in *Zadvydas* and the inadmissible aliens in *Clark* were all subject to final orders of removal and therefore detained under § 1231(a)(6). This distinction belies Petitioner's argument. Had the aliens in *Clark* not been subject to final removal orders, then release under *Zadvydas* would have been unavailable to them. The passage cited by Petitioner, *see Clark*, 543 U.S. at 385–86, means nothing more than an alien whose parole has ended must be "dealt with in the same manner as that of any other applicant for admission to the United States." In Petitioner's case, that means ICE may continue to detain him while his asylum application and removal proceedings are pending. *See Jennings*, 583 U.S. 281, 287 (2018).

Because Petitioner presented for inspection at the border, continues to actively pursue his asylum claim, and is not subject to a final order of removal, he is properly detained under § 1225(b). Nothing in *Lopez-Campos* or *Clark* alters this conclusion. For these reasons, Petitioner's statutory claim fails.

**C. Petitioner's Constitutional Claims Fail on the Merits.**

Petitioner raises two due-process challenges to his ongoing detention. First, he argues that parole was revoked without notice or hearing. Second, he argues that his prolonged detention warrants an individualized, *Zadvydas*-like hearing. His arguments fail on both counts.

The Supreme Court has long held that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border" (the "entry fiction"). *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (citation modified); *see also Leng May Ma*, 357 U.S. at 188 (holding temporary parole into U.S. while admissibility was being determined did not alter status); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (holding alien "was still in theory of law at the boundary line and had gained no foothold in the U.S." despite temporary release into interior). And those stopped at the border are entitled only to the procedure authorized by Congress. *Thuraissigiam*, 591 U.S. at 138–39; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

In this context, Congress has required that "applicants for admission," who present for inspection at the border and are determined to be inadmissible, "shall be detained" until either removal or asylum proceedings become final. 8 U.S.C. § 1225(a), (b)(1)(B)(ii), (b)(2)(A); *see Jennings*, 583 U.S. at 297. The only mechanism for release is discretionary parole. *See* 8 U.S.C.

§ 1182(d)(5)(A). Discretionary parole does nothing to alter the alien's legal status, and once parole ends, the alien is returned to the § 1225(b) custody. *Id.*

Nothing in these procedures vests in Petitioner or those similarly situated a right to be free *within our borders*. For sure, Petitioner has an interest in being at liberty. But when standing at the threshold, that interest runs only one way. As the Court put it in *Thuraissigiam*, "the Government is happy to release him—provided the release occurs in the cabin of a plane bound for [Russia]." 591 U.S. at 119. It is not lost on the Court that this compels a harsh result—particularly for Petitioner, who the uncontested facts show to be a productive member of his community during his four years on parole. But it is the result that Congress and our precedents mandate. As *Zadvydas*[4] makes clear, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. Here, that distinction controls—Petitioner is not entitled to any more process than what Congress has already provided.

## CONCLUSION

Accordingly, the Petition for Writ of Habeas Corpus is **DENIED.** Because this Order resolves the case in its entirety, all other pending motions are **DENIED AS MOOT**. The case shall be **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 13th day of November, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[4] Like his reliance on *Lopez-Campos*, Petitioner's reliance on *Zadvydas* is misplaced. *Zadvydas* turned on an ambiguity within the text of the final removal statute to invoke the constitutional avoidance canon. 533 U.S. at 682, 699. That ambiguity is not present in § 1225(b). Further, the risk of deprivation was indefinite in *Zadvydas*. *Id.* at 690 ("A statute permitting indefinite detention of an alien would raise serious constitutional problems."). Here, Petitioner's detention has a definite end point: the conclusion of his asylum proceedings or his removal.